**AFFIRM; and Opinion Filed January 27, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01531-CR

**HERBERT LOPEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-53754-W**

## OPINION

Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Fillmore

A jury found appellant Herbert Lopez guilty of aggravated sexual assault of a child younger than six years of age and assessed punishment of life imprisonment and a fine of $10,000. In three points of error, Lopez contends (1) the trial court erred in responding to a jury note during the punishment phase of the trial regarding eligibility for parole, (2) the trial court erred in denying Lopez's request to change his election that the jury assess his punishment, and (3) the judgment should be reformed to delete the trial court's order to pay court costs because there is no evidence in the record to support the assessment of costs. We affirm the trial court's judgment.

**Background**

Because Lopez does not challenge the sufficiency of the evidence to support his conviction, only a brief recitation of the facts is necessary. *See King v. State*, 953 S.W.2d 266, 267 (Tex. Crim. App. 1997); *Sperling v. State*, 924 S.W.2d 722, 724 (Tex. App.—Amarillo 1996, pet. ref'd). In a jury trial, Lopez pleaded not guilty to, but was found guilty of, the offense of aggravated sexual assault of a child under the age of six. The jury's guilty verdict was consistent with the indictment charging that Lopez intentionally and knowingly caused the contact and penetration of the sexual organ of V.M., a child younger than six years of age and who was not then the spouse of Lopez, "by an object, to-wit: the sexual organ of defendant." During the punishment phase of the trial, the jury heard evidence of Lopez's 1984 murder conviction, for which he received a sentence of seven years' imprisonment, and 1995 attempted murder conviction, for when he received a sentence of twelve years' imprisonment. The jury assessed punishment of life imprisonment and a $10,000 fine. Lopez filed this appeal.

**Jury Instruction on Ineligibility for Parole**

In his first point of error, Lopez contends the trial court erred in its response to a question from the jury regarding Lopez's eligibility for parole. According to Lopez, the trial court erred by failing to inform the jury during the punishment phase of the trial that Lopez was ineligible for parole.

In the punishment phase of the trial, the State introduced evidence of Lopez's prior convictions for murder and attempted murder. Lopez presented no mitigating or character evidence in the punishment phase of the trial. In closing of the punishment phase, Lopez's counsel argued that Lopez, then seventy-seven years of age, was elderly and imposition of the

–2–

minimum punishment of twenty-five years would effectively be a life sentence for him. The State argued for a life sentence:[1]

> I know he's 77 years old. He's old. But the notion that he would ever have an opportunity to get out and hurt someone again, I believe that warrants a life sentence. . . . I mean, it may not mean a whole lot. Give him 25 years, yeah, he'll probably die in prison. But it's the message that you send, not only to V.M. but also to the people in the community. If you do something like this, this is what happens. If you rape a four-year-old child, you expect to go to prison for the rest of your life.

During punishment deliberations, the jury sent a note to the trial court questioning Lopez's eligibility for parole. The note read, "For this type of offense is their [sic] a possibility for early parole?" Counsel for Lopez requested the trial court to inform the jury of "what is in the statute, which is that parole is not an option." Counsel for the State requested the trial court to inform the jury that it had "all the law and evidence at [its] disposal." The trial court responded to the jury's note as follows: "You have been given all the law and evidence to which you are entitled. Please resume your deliberations." Lopez did not object to the trial court's response to the jury's note. The jury assessed punishment of life imprisonment and a fine of $10,000.[2]

On appeal, Lopez argues the State emphasized Lopez's future dangerousness during closing argument and urged the jury to assess punishment of life imprisonment. According to Lopez, it was "clear" from the jury's note inquiring about the effect of parole law on Lopez's

---

[1] On appeal, the State argues this case involves the "unusual circumstance where both parties argued that a 'life sentence' was the appropriate punishment":

> There was a difference, however, in the parties' definition of "life sentence." [Lopez] asked the jury to choose the minimum sentence of 25 years, so as to leave [Lopez] subject to being able to discharge his sentence and thereby secure his release on March 30, 2036. Given the fact that this would only be two days before [Lopez's] 100th birthday, the minimum sentence was still a "life sentence" in [Lopez's] view. The prosecutor, on the other hand, urged the jury to require that [Lopez's] confinement continue until he died, and thus perhaps a while beyond March 30, 2036 (so as to assure his absolute incapacitation to harm another member of the public).

[2] Lopez was convicted of aggravated sexual assault of a child, a first degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i) (West Supp. 2013). The punishment range for a first degree felony is imprisonment for five to ninety-nine years, or life, and assessment of a fine up to $10,000. TEX. PENAL CODE ANN. §12.32 (West 2011). However, where, as here, the child-victim of the sexual assault was younger than six years of age at the time of the offense, the minimum period of incarceration is increased from five years to twenty-five years. *See* TEX. PENAL CODE ANN. § 22.021(f)(1) (West Supp. 2013).

punishment that the jury was concerned about Lopez's future dangerousness. Lopez asserts the trial court's failure to inform the jury that he was ineligible for parole violated "federal constitutional precedent," article 36.14 of the code of criminal procedure, and "the policies embodied in Texas law governing jury instructions." We are not persuaded by Lopez's arguments.

*Law Governing Jury Instructions*

The trial judge is required to give the jury a written charge setting forth the law applicable to the case, "not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Article 37.07, section 4, of the code of criminal procedure provides the instructions that trial courts are required to give juries to inform them about the law of parole. *See* TEX. CODE CRIM. PROC. ANN. art. 37.04, §4 (West Supp. 2013). In explaining the Legislature's intent regarding the provisions of article 37.07, the court of criminal appeals has explained that the Legislature did not want any creative deviations from its chosen language regarding parole law instructions; consequently, trial judges cannot cut and paste as they see fit. *Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002).

Article 37.07, section 4, provides that the language generally required in a charge addressing the law of parole does not apply to offenses under section 21.02 of the penal code, offenses arising under section 22.021 of the penal code that are punishable under section (f) of that section, or to capital felonies. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, §4. Section 508.145(a) of the government code provides that a person serving a sentence for aggravated sexual assault of a child younger than the age of six at the time of the offense is not eligible for release on parole. TEX. GOV'T CODE ANN. § 508.145(a) (West Supp. 2013).

Thus, the instructions to inform a jury about the law of parole contained in article 37.07 do not apply to Lopez. The Legislature has not provided for such an instruction in prosecutions for aggravated sexual assault of a child under the age of six. The instruction Lopez requested that he was ineligible for parole was a special, non-statutory instruction, and the court of criminal appeals has held that special, non-statutory instructions "generally have no place in the jury charge." *Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007); *see also Levy v. State*, 860 S.W.2d 211, 213 (Tex. App.—Texarkana 1993, pet. ref'd) (in the absence of specific constitutional or statutory authority to do so, the court should not instruct the jury as to effect of parole laws or how long a defendant would be required to actually serve under a given sentence).[3]

Lopez further relies on two cases, *Haliburton v. State*, 578 S.W.2d 726 (Tex. Crim. App. [Panel Op.] 1979) and *Villarreal v. State*, 205 S.W.3d 103 (Tex. App.—Texarkana 2006, pet. ref'd), in support of his argument that the trial court's refusal to instruct the jury that he was ineligible for parole violated the "policies embodied in the law governing jury instructions" because "[t]he policy of the law in Texas requires that juries make an informed and intelligent decision based on every piece of information legally available."

In *Haliburton*, a joint trial of two separate aggravated robbery indictments arising from the same criminal episode resulted in the appellant's conviction in both cases. The appellant claimed that in response to a question from the jury as to whether the two sentences would run concurrently, the trial court improperly instructed the jury that the sentences on both charges would run concurrently. The court of criminal appeals specifically held that the issue of

---

[3] *See also Chavez v. State*, No. 05-12-00415-CR, 2013 WL 2420651, at *2 (Tex. App.— Dallas June 3, 2013, pet. ref'd) (not designated for publication) (defendant convicted of continuous sexual assault of a child was not entitled to instruction that jury was not to consider effects of parole during punishment deliberations); *Cross v. State*, No. 09-11-00406-CR, 2012 WL 6643832, at *4 (Tex. App.—Beaumont Dec. 19, 2012, pet. ref'd) (mem. op., not designated for publication) (trial court did not err by refusing the special, non-statutory instruction defendant requested that, if convicted, he would not be eligible for parole).

concurrent sentences did not involve the "same reasoning as do the cases involving jury consideration of parole." *Haliburton*, 578 S.W.2d at 728. This is so because parole is a matter within the exclusive jurisdiction of the Board of Pardon and Paroles and, as such, is not a matter of concern for the jury. *Id.* While the court of criminal appeals stated that "[t]he policy of the law should require juries to make informed and intelligent decisions based on every piece of information legally available," the court further noted juries "regularly consider probation conditions in *appropriate* cases." (Emphasis added.) *Id.* at 729, & n.5. A majority of the court of criminal appeals concluded the trial court did not err in giving the additional instruction informing the jury that sentences would run concurrently. *Id.* at 729.

The court of criminal appeals has "recognized that '[i]f an instruction may properly be given in the original charge, it may be given as an additional instruction.'" *Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993). However, as discussed above, while article 37.07, section 4, provides parole instructions to be utilized in some cases, that statutory provision has no application to an individual convicted of aggravated sexual assault of a child. The jury, in determining punishment to be assessed in such a case is not authorized to resort to or apply the parole law. Therefore, that Lopez was ineligible for parole was not information to be considered by the jury in its punishment deliberations and was not a "piece of information legally available." *See Haliburton*, 578 S.W.2d at 729.[4]

*Villarreal*, too, is distinguishable from the current case. There, during punishment deliberations, the jury sent a note to the trial court asking the number of years the defendant would "actually serve compared to how many we sentence." *Villarreal*, 205 S.W.3d at 105. In *Villarreal*, the trial court had omitted from the jury charge the mandatory parole instruction to

---

[4] *See also Hickey v. State*, No. 06-07-00077-CR, 2008 WL 191202, at *1 (Tex. App.—Texarkana Jan. 24, 2008, no pet.) (mem. op., not designated for publication) (court of criminal appeals has concluded a trial court does not err in giving an additional instruction concerning whether sentences will run concurrently, but has explicitly rejected applying the reasoning of cases concerning additional instructions on parole law to cases involving additional instructions on whether the sentences will run concurrently (citing *Haliburton*, 578 S,.W.2d at 729–31)).

which the defendant was entitled under article 37.07, section 4. *Id*. at 105. Here, Lopez was not eligible for parole or an article 37.07 mandatory parole instruction.

*Federal Constitutional Precedent*

Lopez asserts that where, as here, state law prohibits a defendant's release on parole, due process[5] requires that the sentencing jury be informed the defendant is ineligible for parole, and the trial court's failure to inform the jury that he was ineligible for parole violated "federal constitutional precedent." We are not persuaded by Lopez's argument.

The State maintains Lopez waived any due process complaint, because he failed to raise that complaint in the trial court or in his motion for new trial. The record confirms Lopez did not present to the trial court the due process claim he now seeks to raise on appeal. Rule 33.1 of the rules of appellate procedure requires that "[a]s a prerequisite to presenting a complaint for appellate review," the party must make a timely request, objection, or other complaint in the trial court, and the party must pursue that complaint to an adverse ruling. TEX. R. APP. P. 33.1. Constitutional rights, including the rights of due process and due course of law, may be waived, if the proper request, objection, or motion is not asserted in the trial court. *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990); *Curry v. State*, 186 S.W.3d 39, 42 (Tex. App.— Houston [1st Dist.] 2005, pet. ref'd); *see also Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (in order for an issue to be preserved on appeal, there must be a timely objection which specifically states the legal basis for the objection, and an objection stating one legal basis may not be used to support a different legal theory on appeal).

Further, Lopez's due process complaint is not an assertion of error in the jury charge, but is in essence a claim that application of section 4(a) of article 37.07 of the code of criminal

---

[5] The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

procedure to Lopez's case violates due process and, therefore, involves an attack on the constitutionality of the statute.[6]  Lopez procedurally defaulted the claim by not raising it in the trial court.  *See Jimenez v. State*, 32 S.W.3d 233, 247 (Tex. Crim. App. 2000) (McCormick, J., concurring).

However, even assuming Lopez preserved this complaint for appellate review, we are not persuaded by Lopez's argument that the trial court's failure to inform the jury that he was ineligible for parole violated "federal constitutional precedent." In support of this argument, Lopez relies on *Simmons v. South Carolina*, 512 U.S. 154 (1994) (plurality op.).  *Simmons* held that in a capital murder case, where "the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Id*. at 156.  On appeal, Simmons argued the prosecution had urged the jury to sentence him to death because, if sentenced to life, he would pose a future threat to society.  *Id*. at 157.  This argument implied that a life sentence could be reduced by the law of parole.  Yet, Simmons was not given the opportunity to inform the jury that a life sentence carried no possibility of parole under South Carolina law.  *Id*. at 165–66. The Supreme Court held this violated fundamental notions of due process because the defendant may have been sentenced to death "on the basis of [inaccurate and misleading] information which he had no opportunity to deny or explain." *Id*. at 161–62.

Lopez acknowledges that, unlike *Simmons*, his is not a death-penalty case.  That difference alone is significant because the *Simmons* holding is an "extension of the Supreme Court's 'death-is-different' mitigating evidence jurisprudence for capital cases." *Jimenez*, 32

---

[6] The claimed constitutional violation apparently is based upon speculation that the jury may have increased Lopez's sentence because of a mistaken belief Lopez was eligible for parole.

S.W.3d at 246 (McCormick, J., concurring).[7] *Simmons* "carved out for capital cases an exception to the general rule that determinations 'as to what a jury should and should not be told about sentencing' are 'purely matters of state law.'" *Id*. (quoting *Simmons*, 512 U.S. at 168). The general rule, rather than the exception carved out in *Simmons*, applies here. *See id*. This is not a death-penalty case. The court of criminal appeals "has historically held that parole is not a proper matter for jury consideration" and "precedent maintaining that parole is not a proper issue for jury consideration remains in effect except to the extent provided for in Article 37.071 § 2(e)(2)(B) [of the code of criminal procedure]." *Hankins v. State*, 132 S.W.3d 380, 384–85 (Tex. Crim. App. 2004) (noting article 37.071 § 2(e)(2)(B) provides a jury may be instructed on a capital defendant's eligibility for parole, but the provision is "narrowly drawn and does not render every aspect of parole law an issue for jury consideration").

But the *Simmons* holding does not apply here for yet another reason. Here, to the extent the prosecution's closing argument in the punishment phase put Lopez's future dangerousness at issue, it was not in the context of a possible sentence reduction resulting from application of the law of parole; instead, the argument was made in the context of the appropriate punishment to be chosen by the jury within the legislatively-mandated sentencing range. Both Lopez and the State assumed Lopez would spend the rest of his life in prison. Lopez argued for the minimum sentence of twenty-five years, but he was seventy-seven years old at that time and his trial counsel admitted the minimum sentence would be a life sentence. The State, on the other hand, argued for the maximum sentence of life, rather than the minimum sentence of twenty-five years, to ensure Lopez would never "have an opportunity to get out and hurt someone again" and to communicate the "message" to the victim and "people in the community" that if you "rape a

_____

[7] "The Due Process Clause does not allow the execution of a person 'on the basis of information which he had no opportunity to deny or explain.'" *Simmons*, 512 U.S. at 161 (quoting *Gardner v. Florida*, 430 U.S. 349, 362 (1977)). "I join in Justice BLACKMUN's opinion that, at least when future dangerousness is an issue in a capital sentencing determination, the defendant has a due process right to require that his sentencing jury be informed of his ineligibility for parole." *Id*. at 172 (Souter, J., concurring).

four-year-old child, you expect to go to prison for the rest of your life." Lopez does not argue, and the record does not reflect, that the prosecution raised the prospect of parole in its closing argument or at any other time; there was no reason for the State to have done so because parole was not available regardless of the length of the sentence imposed by the jury. Unlike *Simmons*, the prosecutor did not invite the jury to believe Lopez would be eligible for parole; accordingly, the prosecutor did not mislead the jury.

*Conclusion*

The Legislature has not provided for the jury instruction Lopez requested regarding ineligibility for parole in a case involving aggravated sexual assault of a child. In the absence of specific constitutional or statutory authority to do so, the court should not instruct the jury as to the effect of the parole laws or how long a defendant will be required to actually serve under a given sentence. *See Walters*, 247 S.W.3d at 211; *Levy*, 860 S.W.2d at 213. Accordingly, we conclude the trial court did not err in failing to give the jury the instruction Lopez requested. We resolve Lopez's first point of error against him.

**Election of Assessment of Punishment**

Lopez initially elected to have the jury assess his punishment. In his second point of error, Lopez contends the trial court erred by allowing the jury to assess punishment after he requested to change his election such that the trial court, rather than the jury, would assess punishment. The State contends it must be presumed from the silent record that the State would not consent to Lopez's request to change his punishment election.

In noncapital cases, the trial court assesses punishment unless the defendant files a sworn motion for jury-recommended community supervision before trial begins or the defendant elects in writing before jury selection begins to have the jury assess punishment. Tex. Code Crim.

–10–

PROC. ANN. art. 37.07, § 2(b) (West Supp. 2013).[8]  After a finding of guilty, a defendant may, with the State's consent, change his election of who assesses punishment.  *Id*.; *Gibson v. State*, 549 S.W.2d 741, 742 (Tex. Crim. App. 1977) (once accused elects whether jury or trial judge is to assess punishment, he may change election only if attorney for the State consents); *Stephens v. State*, 522 S.W.2d 924, 927 (Tex. Crim. App. 1975) (appellant's claim trial court erred in refusing to allow him to withdraw his request to have jury assess punishment was without merit where State objected to the requested change of punishment election).[9]

After the jury found Lopez guilty, by oral motion Lopez's counsel advised the trial court that Lopez wanted the court to assess punishment instead of the jury.  The trial judge stated, "Okay.  What do we need to do?"  The record indicates a discussion ensued that was not recorded.  Nothing further is contained in the record regarding Lopez's attempt to change his prior election for punishment assessment by the jury, and the jury assessed Lopez's punishment.

The record does not contain an objection or consent by the State to Lopez's request to change his election of who would assess his punishment.  When a trial court grants a defendant's request to change his punishment election, the State's silence or failure to object is "tantamount to the State's consent to the change."  *Garza v. State*, 479 S.W.2d 294, 296–97 (Tex. Crim. App. 1972).  Unlike *Garza*, the trial court in this case did not grant Lopez's request to change his punishment election.  We do not infer the State's consent to a change in punishment election from the silent record concerning Lopez's request and the subsequent assessment of punishment

---

[8] The right to have a jury assess punishment is purely statutory and does not rise to the level of a constitutional right.  *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006).

[9] Article 37.07, section 2(b) provides:

> Except as provided by Article 37.071 or 37.072, if a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided, however, that (1) in any criminal action where the jury may recommend community supervision and the defendant filed his sworn motion for community supervision before the trial began, and (2) in other cases where the defendant so elects in writing before the commencement of the voir dire examination of the jury panel, the punishment shall be assessed by the same jury, except as provided in Section 3(c) of this article and in Article 44.29.  If a finding of guilty is returned, the defendant may, with the consent of the attorney for the state, change his election of one who assesses the punishment.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 2(b).

by the jury. *See Daniel v. State*, 577 S.W.2d 231, 235 (Tex. Crim. App. 1979) (concluding that when appellant elected jury punishment before trial, it was not error for jury to assess punishment because "[t]here [was] no consent of the attorney for the State to change [appellant's] election" to court-assessed punishment); *see also Gibson*, 549 S.W.2d at 743 (refusing to presume defendant changed election when record was silent as to that issue).[10] *Cf. Evans v. State*, 542 S.W.2d 139, 142 (Tex. Crim. App. 1976) (record reflected defendant timely filed motion electing to have jury assess punishment; after jury returned verdict of guilty, appellant, with consent of the State, changed election and requested that the court assess punishment; proceedings before jury on issue of punishment were void).

Prior to Lopez's counsel advising the trial court of Lopez's intention to change his punishment election, the record indicates the trial court excused the jury because "we need to prepare the Charge on punishment." After the State and defense rested in the punishment phase of the trial, the record reflects the trial court read the punishment Charge to the jury, after which defense counsel made her closing argument.

Lopez did not object in the trial court to the jury assessing his punishment, either before the punishment phase of the trial or in his motion for new trial, and he does not argue on appeal that he did not have the opportunity to object in the trial court to the jury assessing his punishment. *See Hackey v. State*, 500 S.W.2d 520, 521 (Tex. Crim. App. 1973) (absent an objection, appellate court will presume that defendant agreed that trial judge should assess punishment); *Dickson v. State*, 492 S.W.2d 267, 270–71 (Tex. Crim. App. 1973) (there was nothing inherently detrimental in jury assessing punishment which defendant could not waive by failing to object to such procedure, and, although jury was not authorized to assess punishment

---

[10] *See also Grubbs v. State*, No. 14-12-00681-CR, 2013 WL 4487565, at *2 (Tex. App.—Houston [14th Dist.] Aug. 22, 2013, pet. filed) (not designated for publication) (appellate court did not infer the State's consent to a change in punishment election from the State's silence in the face of trial court ruling refusing to permit a change); *Masters v. State*, No. 14-11-00263-CR, 2012 WL 2899765, at *5 (Tex. App.—Houston [14th Dist.] July 17, 2012, no pet.) (mem. op., not designated for publication).

under article 37.07, section 2(b) because defendant had not elected assessment of punishment by jury, in view of defendant's failure to object to such procedure, no reversible error was presented); *see also Jones v. State*, 644 S.W.2d 546, 549 (Tex. App.—Dallas 1982) (en banc) (op. on reh'g), *pet. ref'd*, 646 S.W.2d 449, 449 (Tex. Crim. App. 1983) (per curiam) (court of criminal appeals agreed with statement in appeals court opinion that: "Where procedural requirements do not affirmatively appear in the record to have been violated, a presumption of regularity of the trial court's ruling must prevail.").

We cannot conclude on this record that the State consented to Lopez's change of punishment election. Moreover, Lopez did not object to the jury assessing punishment. We conclude the trial court did not err in allowing the jury to assess Lopez's punishment. Accordingly, we resolve Lopez's second point of error against him.

### Court Costs

In his third point of error, Lopez requests we reform the trial court's judgment to delete the requirement that he pay court costs because the clerk's record does not contain a bill of costs. If a criminal action is appealed, "an officer of the court shall certify and sign a bill of costs stating the costs that have accrued and send the bill of costs to the court to which the action or proceeding is . . . appealed. TEX. CODE CRIM. PROC. ANN. art. 103.006 (West 2006). Costs may not be collected from the person charged with the costs until a written bill, containing the items of cost, is produced and signed by the officer who charged the cost or the officer entitled to receive payment for the cost. *Id*. art. 103.001.

The clerk's record in this case did not contain a copy of the bill of costs. In light of Lopez's specific complaint that the clerk's record did not contain a bill of costs, we ordered the Dallas County District Clerk to file a supplemental clerk's record containing the certified bill of costs associated with this case, and the clerk did so. *See* TEX. R. APP. P. 34.5(c)(1) (rules of

appellate procedure allow supplementation of clerk's record if relevant items have been omitted).

Lopez's complaint that the evidence is insufficient to support the imposition of costs because the clerk's record did not contain a bill of costs is now moot. *See Coronel v. State*, No. 05-12-00493-CR, 2013 WL 3874446, at *4 (Tex. App.—Dallas July 29, 2013, pet. ref'd) (citing *Franklin v. State*, 402 S.W.3d 894, 895 (Tex. App.—Dallas 2013, no pet.)). We resolve Lopez's third point of error against him.

In response to the Court's orders requiring supplementation of the record, Lopez filed motions in which he objects that the bill of costs in the supplemental clerk's record is not a "proper bill of costs" and the bill of costs was not filed in the trial court or brought to the trial judge's attention before costs were entered in the judgment.

With respect to Lopez's first objection, Lopez argues the bill of costs in the record is not a "proper bill of costs" because it consists of "unsigned, unsworn computer printouts." Here, the district clerk provided a "Bill of Costs Certification" containing the costs that have accrued to date in Lopez's case; it is certified and signed by the deputy district clerk. Lopez acknowledges the district clerk has certified that the "documents constitute costs that have accrued to date," but Lopez argues the documentation does not "set out the costs as required by statute." While the code of criminal procedure requires a record to be kept, the code is silent on the form of such a record except to the extent it must be certified and signed "by the officer who charged the costs or the office who is entitled to receive payment for the cost," "stating the costs that have accrued" if the cause is appealed. *See* TEX. CODE CRIM. PROC. ANN. art. 103.001, .006. We conclude the supplemental record filed by the clerk meets the mandate of the code of criminal procedure. *See Coronel*, 2013 WL 3874446, at *4.

With respect to his second objection, Lopez complains that there is no indication the bill of costs existed at the time the judgment was entered or that they were filed in the trial court or

brought to the attention of the trial judge before the costs were entered in the judgment. However, there is no requirement that a bill of costs be presented to the trial judge at any time before judgment. *Id*. at *5. We deny Lopez's motions objecting to the supplemental record.

Finally, we note that in his original brief and his objections to the bill of costs, Lopez does not challenge the propriety or legality of the specific costs assessed; therefore, we do not address these matters

## Conclusion

We deny Lopez's motions objecting to the supplemental clerk's record. We resolve Lopez's points of error against him. Accordingly, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121531F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HERBERT LOPEZ, Appellant

No. 05-12-01531-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. F11-53754-W.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of January, 2014.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE